**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

**ARASH DIBAZAR** *
*
*Plaintiff,* *
v. * CASE NUMBER: GLR-17-237
*
**ALEXANDER ROSE QUINTANA** *
*
*Defendant.* *
*
* * * * * * * * * * * *

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO VACATE THE ENTRY OF DEFAULT AND/OR MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT**

COMES NOW the Defendant, Alexander Rose Quintana, by and through his counsel, Breon Lamar Johnson and Forster, Johnson and LeCompte, Attorneys at Law, LLC, pursuant to Md. Code Ann., Cts. & Jud. Proc. §5-807 and Federal Rules of Civil Procedure Nos. 55(c), 12(b)(6), and 56, and hereby files this Motion to Vacate the Entry of Default and/or Motion to Dismiss or in the Alternative for Summary Judgment and in support, states:

## INTRODUCTION AND PRELIMINARY STATEMENT

Plaintiff, Arash Dibazar (hereinafter, referred to as the "Plaintiff") filed a Complaint with this Honorable Court against the Defendant, Alexander Rose Quintana (hereinafter, referred to as the "Defendant"). Plaintiff alleges that certain social media posts authored by the Defendant are Defamatory *Per Se*. Plaintiff's suit is directed at protected expression, namely Defendant's social media posts to the public at large regarding an issue of public concern, and Plaintiff's Complaint is intended to inhibit such expression. Plaintiff's case is a Strategic Lawsuit Against Public Participation (hereinafter, referred to as a "SLAPP Suit") as defined under Maryland law and should be dismissed. *See* Md. Code Ann., Cts. & Jud. Proc. §5-807.

To date, the Defendant has failed to respond to the Complaint and the Clerk of this Honorable Court has entered a default against the Defendant. Defendant prays that this Honorable Court enter an Order vacating the Clerk's Entry of Default and dismiss the Complaint for failure to state a claim under Maryland Law.

## STATEMENT OF FACTS

### A. FACTUAL BACKGROUND

Plaintiff is a self-proclaimed, world-renowned entrepreneur, motivation speaker, philosopher, and the founder of IMC Academy, LLC. Complaint ¶¶ 4 & 7. Plaintiff promotes himself as a "lifestyle coach" and disseminates his teachings and philosophy *via* various mediums (i.e. print media, social media, videography, and in-person lectures). Complaint ¶ 7. The Plaintiff advertises these services as the IMC Philosophy, which is intended to improve the consumers' "life experiences, ethics, and success levels." *Id.* Plaintiff's notoriety as a "lifestyle coach" and the influence of the IMC Philosophy have grown worldwide and have developed into an enterprise, comprised of a conglomerate of businesses. These businesses are intended to promote the IMC Philosophy and its teachings to the public at large. Complaint ¶ 4. Consumers of the Plaintiff's services include several thousand fans and followers. *Id.* The Defendant is a former client of the Plaintiff's enterprise. Complaint ¶ 5.

Plaintiff asserts that he and the Defendant have social media fans and followers. Complaint ¶ 9. Social media users often use tags to increase search engine visibility of a social media post. Complaint ¶ 12. Plaintiff contends that Defendant's social media posts are defamatory. Complaint ¶¶ 9 and 12. In fact, Plaintiff alleges that the Defendant's social media posts are intended to stop the Plaintiff's own social media posts and destroy the Plaintiff's work with the public at large. *Id.* Plaintiff takes issue with social media posts including tags such as "'undocumented sex offender'

‘#endabuse’ ‘#Sexualharrassment’ ‘#Domesticviolence’ ‘drugged women to have sex with them’ ‘#rape’ and ‘#daterape’.” Complaint ¶ 15. Plaintiff acknowledges that these social media posts included videos with these tags. Complaint ¶ 17. Plaintiff also contends that he came to the aid of a young woman “stalked” by the Defendant. Complaint ¶ 8. Plaintiff provides this defense of the young women as the motive for the Defendant’s social media posts. *Id.*

**B. PROCEDURAL BACKGROUND**

On or about January 26, 2017, Plaintiff filed suit with this Honorable Court alleging diversity jurisdiction over a complaint sounding in common law defamation. (Docket No. 1). On January 27, 2017, the Clerk of this Honorable Court issued a summons to the Defendant, directing that a response to the Complaint be served upon the Plaintiff within twenty-one (21) days. (Docket No. 3). On or about February 20, 2017, the Defendant entered into a fee agreement with the undersigned counsel to prepare the instant motion to dismiss the Plaintiff’s Complaint for failure to state a claim. The Defendant satisfied the conditions precedent to the undersigned representation on February 23, 2017.

On or about April 20, 2017, the Plaintiff filed an Affidavit of Private Process Service, asserting that personal service was effectuated upon the Defendant on or about February 8, 2017. (Docket No. 4). Contemporaneously therewith, the Plaintiff filed a Motion for Entry of Default pursuant to Federal Rule of Civil Procedure No. 55 (a). (Docket No. 5). On May 4, 2017, the Clerk of this Honorable Court made an Entry of Default for failure to plead pursuant to Plaintiff’s request. (Docket No. 6).

## ARGUMENT

### A. THIS HONORABLE COURT SHOULD EXERCISE ITS DISCRETION TO FIND "GOOD CAUSE" TO VACATE THE ENTRY OF DEFAULT.

The Federal Rules of Civil Procedure promote the clear preference for disposing of claims based upon their merits. *See Payne ex rel. Estate of Calzada v. Brake*, 439 F. 3d 413, 204-05 (4th Cir. 2006), *Colleton Preparatory Academy v. Hoover Universal*, 616 F. 3d 413, 417 (4th Cir. 2010), *U.S. v. Moradi*, 673 F.2d 725 (4th Cir. 1982). When a Defendant fails "to plead or otherwise defend" in accordance with the rules, Rule 55 of the Federal Rules of Civil Procedure authorizes the entry of a default and/or default judgment. However, entry of a default is not fatal to the defense of a Defendant who is able to establish good cause for his failure to plead or otherwise defend a Complaint. *See* Federal Rule of Civil Procedure No. 55(c). A trial court may, instead, set aside the entry of default or a default judgment upon considering four (4) factors and making a finding of good cause: (1) the promptness of the moving party's action to vacate the default; (2) the moving party's culpability in the default; (3) the existence of a meritorious defense to the moving party; and (4) the potential prejudice to the nonmoving party. *Id*. Trial judges are vested with wide discretion, which must be liberally exercised, in entertaining default judgments and in providing relief therefrom. *Id*. Said discretion must be gauged in light of the facts and circumstances of each occasion and the exercise of discretion by a trial judge will not be disturbed lightly. *Id*. (Emphasis Added).

The Defendant has sought to defend against this action since February 2017 when the undersigned was retained. But for the undersigned's inability to complete research and pleading considering personal trauma, an entry of default by the Clerk of this Honorable Court would not have been necessary. Shortly after the Defendant retained the undersigned, counsel's mother abruptly became bedridden because of the progression of her two (2) year old cancer diagnosis.

Undersigned continued to care for his mother up until May 17, 2017, when she passed away. It is beyond dispute that Defendant retained counsel within sufficient time to have a response filed by the required date. Counsel failed to prepare the necessary pleading and as a result, a notice of default was entered by the Clerk of this Honorable Court. The Defendant possesses little to no culpability in the delay in asserting a defense. The Fourth Circuit cautions that justice demands that a blameless party not be disadvantaged by the errors or neglect of his attorney which cause a final, involuntary termination of proceedings. *See Moradi*, 673 F.2d at 728. Instead, this Honorable Court should balance the possibility of an alternative appropriate sanction and the merits of the proffered defense against any prejudice to the Plaintiff.

"[D]ismissal with prejudice is a 'harsh sanction which should not be invoked lightly.'" *Chandler Leasing Corp. v. Lopez*, 669 F.2d 919, 920 (4th Cir. 1982). As a result, trial courts routinely look to the availability of a less drastic sanction when considering whether to vacate an entry of default. *See Colleton,* 616 F.3d at 728 (suggesting less drastic sanction of award of costs and fees to oppose motion); *Lolatchy v. Arthur Murray, Inc.*, 816 F. 2d 951, 953 (4th Cir. 1987) (similar). Where only a default has been entered without an accompanying default judgment, the standard for lifting the default is especially generous. *Colleton*, 616 F.3d at 418. Here, the Clerk has entered a default against the Defendant. Plaintiff has yet to request a default judgment and it is likely that a hearing will be necessary to ascertain the value of Plaintiff's claim. The Plaintiff has only suffered delay in pleadings, all evidence is retrievable, and this Plaintiff must still satisfy this Honorable Court as to the amount of damages, therefore, he cannot claim prejudice. Furthermore, Defendant satisfies, as discussed *infra*, the most critical factor for vacating an entry of default: a meritorious defense.

## B. THE DEFENDANT HAS A MERITORIOUS DEFENSE OF ABSOLUTE AND QUALIFIED IMMUNITY FROM A CLAIM OF DEFAMATION BY THE PLAINTIFF.

"In some circumstances, an absolute or qualified privilege defeats a claim of defamation, if the defendant did not abuse that privilege." *See Piscatelli v. Van Smith*, 424 Md. 294 (2012) (citing *Hanrahan v. Kelly*, 269 Md. 21 (1973). "An absolute privilege is distinguished from a qualified privilege in that the former provides immunity regardless of the purpose or motive of the defendant, or the reasonableness of his conduct, while the latter is conditioned upon the absence of malice and is forfeited if it is abused." *Id.* (citing *Smith v. Danielczyk*, 400 Md. 98 (2007)). Generally, communications are absolutely privileged based upon grounds of public policy. *See McBee v. Fulton*, 47 Md. 403 (1878); *Sindorf v. Jacron Sales Co., Inc.*, 27 Md. App. 53 (1975). "However, an absolute privilege may be extended to non-judicial proceedings where the same policy considerations which underlie the application of the privilege in the judicial sphere are also present." *See Imperial v. Drapeau*, 351 Md. 38 (1998); *Odyniec. v. Schneider,* 322 Md. 520 (1991). It must appear from the nature and conduct of the proceeding that society's benefit from unfettered speech during the proceeding is greater than the interests of an individual who might be defamed during the proceeding. *Id.*

Plaintiff's suit is based upon his own protected communication of his political, social, and ideological philosophes with the public at large. Defendant's social media posts were at worse oppositional communications with the public at large. Defendant asserts that he is entitled to an absolute privilege from the instant suit because the same policy considerations which underlie the application of an absolute privilege in the judicial sphere are also present in the discourse conducted through social media. In fact, the Plaintiff intends to inhibit the Defendant's protected oppositional expression with the filing of this suit. "Information and opinion on questions of

public concern is ordinarily a legitimate, protected and indeed cherished activity." *Curtis Publishing Co. v. Butts,* 388 U.S. 130, 150 (1966). In considering whether speech is directed to a matter of public concern, courts look to "the content, form, and context of a given statement, as revealed by the whole record." *Connick v. Myers,* 461 U.S. 138, 148 (1983).

Plaintiff's notoriety as a "lifestyle coach" and the influence of the IMC Philosophy have grown worldwide and have developed into an enterprise, comprised of a conglomerate of businesses and promoting the philosophies and teachings to the public at large. Complaint ¶ 4. Consumers of the Plaintiff's services include several thousand fans and followers. *Id*. The Plaintiff has become a public figure. Plaintiff has various social media accounts including video readily accessible by anyone with the Internet. He markets himself and the IMC Philosophy and credits himself as a "master in the areas of communication, seduction, how to influence people's minds and how to become unstoppable while striving for your passion." *See* Welcome to Arash Dibazar Channel!, https://www.youtube.com/user/entermymind7/featured. . The social media posts that the Defendant posted directly related to the topics, views, and philosophies that the Plaintiff communicated to the public at large. The fact that these oppositional posts occurred on the Internet is of crucial import as the same protections necessary in the judicial sphere are required to ensure perfect information in the age of social media. If this Honorable Court does not agree that Internet Communications are subject to an absolute privilege, it is certain that Maryland law also recognizes four (4) basic common law qualified privilege of which at least two (2) provide protection from the Plaintiff's suit. *See Gohari v. Darvish*, 363 Md. 42 (2001); *Piscatelli v. Smith*, 424 Md 294 (2012).

In a defamation action, a "conditional or qualified" privilege protects a defendant from liability where the statement was published in good faith in furtherance of his or her own legitimate interest

or those shared in common with the recipient or third parties, or where his or her declaration would be of interest to the public in general. *Offen v. Brenner*, 402 Md. 191 (2007). Maryland law also recognizes a related, but different qualified privilege of fair commenting. *See Piscatelli v. Van Smith*, 424 Md. 294 (2012). To be successful against a Defendant who has established the applicability of either of these privileges, a Plaintiff must demonstrate abuse of the privilege. *Id.* That is that the Plaintiff must demonstrate that defendant made his or her statements with malice, defined as a person's actual knowledge that his or her statement is false, coupled with his or her intent to deceive another by means of that statement. *Id*. at 307-308 ("Once a prima facie case for a privilege is adduced, the plaintiff must produce facts, admissible in evidence, demonstrating the defendant abused the privilege, in order to generate a triable issue for the fact-finder.) (citing *Ellerin v. Fairfax Sav. F.S.B.,* 337 Md. 216, 240 (1998)). While malice is usually a question for the fact-finder, it need not be submitted to the fact-finder when the plaintiff fails to allege or prove facts that would support a finding of malice. *Id.* (citing *Simon v. Robinson*, 221 Md. 200, 205-206 (1959)) ("Once a judge determines that a privilege exists, the question of whether the privilege was abused is for the jury, subject to the censorial power of the judge where there is no evidence of malice and the burden on the issue is on the plaintiff.").

The specific qualified privilege of fair comment is available for opinions or comments regarding matters of legitimate public interest. *Piscatelli*, 424 Md. at 314. Whether a publication comes within the purview of this privilege often turns on whether or not it contains misstatements of fact as distinguished from expression of opinion. *Id*. (citing *A.S. Abell Co. v. Kirby*, 227 Md. 267 (1961)). The test for determining whether a published statement is fact or opinion is "[w]ould an ordinary person, reading the matter complained of, be likely to understand it as an expression of the writer's opinion or as a declaration of an existing fact?" *Id*. The fair comment privilege

protects an opinion only where the facts on which it is based are truly stated or privileged or otherwise known either because the facts are of common knowledge or because, though perhaps unknown to a particular recipient of the communication, they are readily accessible to him. *Id*. Maryland law protects simple opinions from being defamatory, but does not protect mixed opinions. *Id*. A simple or pure opinion includes derogatory opinions based on non-defamatory facts, true facts, privileged facts, or facts assumed mutually by the opinion maker and recipient. *Id.*

Here, the Defendant was merely commenting and/or providing an oppositional opinion to the Plaintiff's opinions contained in the various social media video posts. The record before the court shows that the Defendant's social media posts included links to the Plaintiff's video posts and the Defendant commented on the substance of the said video posts. Defendant presented his opinions in the form of a "hashtags". Even these hashtags were a protected exercise of expression under the fair comment privilege. Further, Defendant acted without any malice. The Defendant social media posts provided a hyperlink to the Plaintiff's own video blogs, which provided the factual bases for the opinions at issue. This continued litigation, despite the absence of actual mixed opinion or malice by the Defendant, is an attempt to hinder the Defendant's constitutionally protected right to free expression, and has been litigated in bad faith. The purpose of this prosecution has been the satisfaction of the Plaintiff, the intimidation of the Defendant. The current action is a SLAPP suit, as defined by Maryland law. This Honorable Court should apply the Maryland Anti-SLAPP statute as it is clear that the legislature intended the statute to modify the Maryland state defamation law in order to protect defendants' right to expression from oppressive and burdensome litigation such as the instant suit.

### C. THE MARYLAND ANTI-SLAPP STATUTE IS APPLICABLE BECAUSE IT DOES NOT DIRECTLY CONFLICT WITH ANY FEDERAL RULES AND THE BALANCE OF INTERESTS WEIGH IN FAVOR OF ITS APPLICATION.

Plaintiff's claim is a SLAPP suit and inherently filed in bad faith. *See* Md. Code Ann., Cts. & Jud. Proc.§ 5-807(b)(1). A SLAPP suit is defined as a lawsuit based on protected communication with the public at large, regarding speech materially related to that communication, and intended to inhibit the exercise of that speech. Md. Code Ann., Cts. & Jud. Proc.§ 5-807. A Plaintiff initiates a SLAPP suit not with the goal of securing a judgment but rather to intimidate, harass, and burden a defendant's speech or petitioning. *See Fighting SLAPPS in Federal Court: Erie, the Rules Enabling Act, and the Application of State anti-SLAPP Laws in Federal Diversity Actions*, 56 B.C.L. Rev 1181 (2015). The importance of an effective anti-SLAPP statute is highlighted by the lack of protections against exorbitant litigation costs available to SLAPP suit defendants. *Id*. In Maryland, a Defendant is afforded such protection by Md. Code Ann., Cts. & Jud. Proc. § 5-807. "A defendant in a SLAPP suit is not civilly liable for communicating with … the public at large if the defendant, without constitutional malice, reports on, comments on, … or in any way exercises rights under the First Amendment of the U.S. Constitution or Article 10, Article 13, or Article 40 of the Maryland Declaration of Rights regarding … any issue of public concern." Md. Code Ann., Cts. & Jud. Proc.§ 5-807. Maryland's Anti-SLAPP laws focus on the swift and efficient dismissal of frivolous lawsuits against protected activity and emphasize subjecting the "SLAPPed" party to as little time in court as possible. *See Fighting SLAPPS in Federal Court*, 56 B.C.L Rev at 1187.

While the Maryland anti-SLAPP provision may be construed as procedural in nature, it positively affects the substantial right to free expression. Federal courts have no independent anti-SLAPP provisions. To determine whether the provisions of Maryland's anti-SLAPP law may be

properly applied in this action, this Court must determine whether the statute directly conflicts with the Federal Rules and even if a conflict arises, whether Maryland's interest in applying the law outweighs Federal interests implicated by the rule.

**i. <u>There is no direct conflict created by applying section 5-807 in the present action.</u>**

Except in matters governed by the Federal Constitution or by Acts of Congress, the law to be applied in any case is the law of the State. *See Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78 (1938) (*citing Baltimore & Ohio R. Co. v. Baugh*, 149 U.S. 368, 401 (1893)). Whether the law of the State shall be declared by its Legislature in a statute or by its highest court in a decision is not a matter of federal concern. There is no federal general common law. Congress has no power to declare substantive rules of common law applicable in a State, whether they be local in their nature or "general," be they commercial law or a part of the law of torts. And no clause in the Constitution purports to confer such a power upon the federal courts. *Id.* Thus, a federal court is required to adjudicate claims brought before it in accordance with the applicable substantive state law, while applying the applicable federal procedural rules. *Id*.

To apply Maryland's anti-SLAPP provision, this Court must begin by considering whether it would result in a "direct collision" with the Federal Rules. *See Walker v. Armco Steel Corp.,* 446 U.S. 740, 749-50 (1980); *see also United States ex rel. Newsham v. Lockheed Missiles & Space Co.,* 190 F.3d 963, 972 (1999) (performing an *Erie* analysis before applying California's anti-SLAPP statute). In *Walker,* the court found no conflict between the Federal Rules and the Oklahoma statute at issue because both statutes could "exist side by side, therefore, each controlling its own intended sphere of coverage without conflict." *Walker,* 446 U.S. at 752. Here, section 5-807 merely provides an additional procedural mechanism for "weeding out meritless claims before trial." *Lockheed Missiles,* 190 F.3d at 973. In fact, the Maryland Anti-SLAPP statute

merely requires the availability to the defendant of a special motion and hearing early in the litigation of the suit. This requirement likely only requires one of two already available procedural devices to protect the defendant from this abusive use of process: (1) a heightened pleading requirement or a bifurcation of liability and damages. It is important to note that the Maryland Anti-SLAPP statute's augmentation of the defamation laws in Maryland is intended to protect a constitutional right—Defendants' right to freedom of expression – not directly addressed by the Federal Rules. No direct conflict with the Federal Rules exists.

**ii. <u>The Court must apply Maryland's anti-SLAPP provision because the state interests in its application vastly outweigh any Federal interests implicated.</u>**

Federal courts are cautioned against applying federal rules, even in direct collision with state provisions, where the application of the rule "abridges, enlarges, or modifies a substantive right". *See* 28 U.S.C. § 2072 (granting the Supreme Court the power to prescribe rules of practice and procedure for federal courts so long as such rules do not abridge, enlarge or modify any substantive rights). Since there is no direct conflict between the Federal Rules and section 5-807, the Court moves to balancing the state and federal interests implicated in invoking the anti-SLAPP statute. *See Hanna v. Plumer,* 380 U.S. 460, 471 (1965). The Maryland General Assembly enacted the "Qualified Immunity from Civil Liability -SLAPP Suits" Act. In doing so, it recognized that the "goal [of SLAPP Suit Plaintiffs] is often not to win the case, but rather to cause the defendants to devote such significant resources to defending it that they are unable to continue the challenged activities." It is important to note that the plain language of the Maryland Anti-SLAPP statute appears to codify the conditional or qualified privileges discussed *supra*. *See* Maryland Annotated Code, Courts and Judicial Proceedings Article § 5-807(c) (stating that a defendant in a SLAPP suit is not civilly liable … [where the defendant] reports on, comments on, rules on, challenges,

opposes or in any other way exercises rights under the First Amendment to the U.S. Constitution or [the Maryland Declaration of Rights]). Anti-SLAPP motions such as the one before this Court provide relief by requiring dismissal before the cost of litigation drives SLAPP defendants into bankruptcy or settlement. Maryland's legislature has articulated important substantive state interests in providing relief to SLAPP defendants, and the anti-SLAPP statute thereby represents an important policy choice. *cf. Gasperini v. Center for Humanities, Inc.,* 116 S.Ct. 2211, 2220 (1996) (finding that while the state law at issue was plainly procedural, its objective was manifestly substantive in applying the state law).

There are no federal interests implicated in the application of anti-SLAPP statutes. *See Lockheed Missiles,* 190 F.3d at 973 (finding no federal interests against applying California's anti-SLAPP provision); *see also Byrd v. Blue Ridge Rural Elec. Coop. Inc.,* 356 U.S. 525, 537-40 (1958) (balancing state and federal interests in considering whether to apply a state law requiring that judge, rather than jury, decide questions of immunity). Furthermore, the preclusion of the protections granted by Md. Code Ann., Cts. & Jud. Proc.§ 5-807(b)(1) would enlarge and/or modify the Plaintiff's substantive right to pursue a defamation claim in the federal courts. Therefore, this Court should apply the provisions of the statute in the instant matter. Additionally, the *Erie* rule facilitates the "discouragement of forum-shopping and inequitable administration of the law." *Hanna,* 380 U.S. at 468. Failure to apply state anti-SLAPP provisions would encourage forum shopping, and give litigants in meritless SLAPP suits an incentive to bring suit in a federal forum to the considerable disadvantage of defendants. There are no federal interests implicated in the application of the anti-SLAPP statute, and there are strong state policy interests in the application of the provision.

Since there is no direct procedural conflict created by applying section 5-807, and state interests weigh strongly in favor of its application, this Court should apply Maryland's anti-SLAPP statute in this case. Federal courts in other states with anti-SLAPP legislation have found such provisions do not conflict with the Federal Rules and are substantive in nature. *See, e.g. Lochkeed Missiles,* 190 F.3d at 973 (California court applying anti-SLAPP statute); *see also Containment Techs, Group, Inc. v. Am. Soc'y of Health Sys. Pharmacists,* 2009 U.S. Dist. LEXIS 25421 (S.D. Ind. 2009) (Indiana court, finding anti-SLAPP provision to be substantive in nature and applying its substantive provisions); *Buckley v. DirecTV,* 276 F. Supp. 2d 1271, 1276 (N.D. Ga. 2003) (applying Georgia's anti-SLAPP provision and dismissing the action); *Airtran Airlines, Inc. v. Plain Dealer Pub. Co.,* 66 F. Supp. 2d 1355, 1369 (N.D. Ga. 1999) (assuming without deciding that Georgia anti-SLAPP statute applies in federal diversity actions); *Bible & Gospel Trust v. Twinam,* 2008 U.S. Dist. LEXIS 103674 (D. Vt. 2008) (holding the Vermont anti-SLAPP statute applied in diversity actions, as it did not directly conflict with the Federal Rules).

## CONCLUSION

This Honorable Court should vacate the entry of default against the Defendant. The Defendant is not culpable in this default, the Plaintiff's claim is a SLAPP suit and should be dismissed, the non-moving party is not prejudiced by the delay, and the Defendant possesses multiple meritorious defenses. Therefore, there exists good cause to vacate the entry of dismissal. This Honorable Court also possesses discretion to impose an alternative, less drastic, and more appropriate sanction.

Plaintiffs' lawsuit is a SLAPP suit as defined by Maryland law, as it alleges defamation based on Defendant's constitutionally protected expression, regarding communication materially related to that expression, and is intended to inhibit Defendant's freedom of expression. The

Maryland Legislature intended to alter the defamation laws of the State of Maryland. The Maryland Legislature intend can operate consistently with the procedural device available to the Federal Judiciary. Defendant should be afforded the protection from civil prosecution for his communications as intended by the Legislature. Plaintiff's instant action should be dismissed as barred by Maryland's anti-SLAPP statute.

_____/s/ Breon Lamar Johnson
Breon Lamar Johnson (Bar # 18953)
Forster, Johnson & LeCompte
One South Street, Suite 2125
Baltimore, Maryland 21202
bljohnson@forsterjohnsonlaw.com
410-685-6000/telephone
443-320-9241/facsimile
Attorney for the Defendant

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on the 16th day of June, 2017, a copy of the foregoing Motion to Vacate the Entry of Default and/or Motion to Dismiss or in the Alternative for Summary Judgment, Memorandum in Support, and Proposed Order was mailed to Plaintiff Arash Dibazar, 2229 Lincoln Avenue, San Jose, California 95125.

_____/s/ Breon Lamar Johnson
Breon Lamar Johnson (Bar # 18953)